## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTINA SANTI,<br><br>             Plaintiff,<br><br>        v.<br><br>HOT IN HERE, INC., VLAD LYUBOVNY, in his individual and professional capacities, and LATAYA EDWARDS, in her individual and professional capacities,<br><br>           Defendants. | Civil Case No.: 1:18-cv-3028<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Christina Santi, by and through her attorneys, Faruqi & Faruqi, LLP, hereby alleges as follows against Defendants Hot In Here, Inc. ("VladTV" or the "Company"), Vlad Lyubovny, and Lataya Edwards (collectively, "Defendants"):

### PRELIMINARY STATEMENT

"*As a woman, your only purpose in life is to have children*."

"*Racism isn't as bad anymore because interracial marriage is legal and Black people aren't slaves anymore*."

1.      For Ms. Santi, the former Digital Content Manager for hip-hop and pop culture website VladTV.com, enduring racist, misogynistic, and other discriminatory remarks like these were simply all in a day's work.

2.      Employees at VladTV have come to expect such comments from Vlad Lyubovny, more popularly known as "DJ Vlad," who is known around his offices for berating employees and saying whatever derogatory remarks come to his mind.

3.      When Ms. Santi, a Black woman, repeatedly complained about these comments, both Mr. Lyubovny and his wife, Lataya Edwards, went to great lengths to suppress Ms. Santi's complaints by attempting to force her out of her job.

4.      Indeed, Mr. Lyubovny and Ms. Edwards told Ms. Santi variously that, as a Black woman, she may simply not be a good fit at VladTV and that, if she chose to stay, she should just learn to "deal with" Mr. Lyubovny's violent and discriminatory outbursts.

5.      The hostile work environment and culture of intimidation at VladTV only escalated further when Ms. Santi disclosed that she was pregnant and, around the same time, began to speak up even louder about discrimination at the Company.

6.      Unsurprisingly, VladTV refused to investigate or otherwise attempt to remedy the discrimination about which Ms. Santi complained.

7.      Similarly, Defendants refused to provide Ms. Santi modest workplace accommodations that she required to ensure the health of her unborn child, leaving her no choice but to leave the work environment that another Black woman who left VladTV accurately described as "toxic."

8.      To redress these wrongs, as well as Defendants' refusal to pay her overtime compensation, Ms. Santi brings claims against Defendants for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the New York Labor Law, N.Y. Lab. Law §§ 190, *et seq.* ("NYLL"), the Family and Medical Leave Act, 29 U.S.C §§ 2601, *et seq.* ("FMLA"), Section 1981 of the Civil Rights Act, 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq.* ("NYCHRL").

## JURISDICTION AND VENUE

9.      Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiff's rights under the FLSA, FMLA, and Section 1981.

10.     This Court also has supplemental jurisdiction over Plaintiff's related claims arising under State and City law pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

## ADMINISTRATIVE PREREQUISITES

12.     Shortly after the filing of this Complaint, Plaintiff will file a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging, *inter alia*, discrimination in violation of Title VII of the Civil Rights Act, as amended by the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") and the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, *et seq*. (the "ADA").

13.     Within 90 days of receiving a Notice of Right to Sue from the EEOC, Plaintiff will seek leave of the Court to file an Amended Complaint adding, *inter alia*, Causes of Action for violations of Title VII and the ADA.

14.     Any and all other prerequisites to the filing of this action have been met.

## PARTIES

**A.      Plaintiff Christina Santi**

15.     Plaintiff Christina Santi is a Black, female resident of the City of New York and was employed by Defendants Hot In Here, Inc., Vlad Lyubovny, and Lataya Edwards from on or

around October 2011 through February 21, 2018.

16.     At all relevant times, Plaintiff Christina Santi was an "employee" of Defendants Hot In Here, Inc., Vlad Lyubovny, and Lataya Edwards within the meaning of all relevant statutes.

**B.     Defendant Hot In Here, Inc.**

17.     Defendant Hot In Here, Inc. is a foreign corporation with its principal place of business located at 240 West 35th Street, Suite 1201, New York, New York 10001.

18.     At all relevant times, Defendant Hot In Here, Inc. was an "employer" within the meaning of all relevant statutes.

**C.     Defendant Vlad Lyubovny**

19.     Defendant Vlad Lyubovny is Chief Executive Officer of VladTV.

20.     At all relevant times, Defendant Vlad Lyubovny established, implemented, disseminated, and controlled all of Defendants' employment policies.

21.     At all relevant times, Defendant Vlad Lyubovny controlled and directed the terms and conditions of Plaintiff Christina Santi's employment.

22.     At all relevant times, Defendant Vlad Lyubovny maintained and exercised his power to hire, fire, discipline, and promote Plaintiff Christina Santi.

23.     At all relevant times, Defendant Vlad Lyubovny was an "employer" within the meaning of all relevant statutes.

**D.     Defendant Lataya Edwards**

24.     Defendant Lataya Edwards is the Director of Human Resources for VladTV.

25.     At all relevant times, Defendant Lataya Edwards established, implemented, disseminated, and controlled all of Defendants' employment policies.

4

26.     At all relevant times, Defendant Lataya Edwards controlled and directed the terms and conditions of Plaintiff Christina Santi's employment.

27.     At all relevant times, Defendant Lataya Edwards maintained and exercised her power to hire, fire, discipline, and promote Plaintiff Christina Santi.

28.     At all relevant times, Defendant Lataya Edwards was an "employer" within the meaning of all relevant statutes.

## FACTS

### A.    Background Regarding Ms. Santi's Employment and Denial of Overtime Compensation

29.     Defendants own and operate the hip-hop and pop culture website VladTV.com.

30.     Ms. Santi began working for Defendants in or around October 2011.

31.     Throughout her employment at VladTV, Ms. Santi worked approximately 50 hours per week.

32.     Ms. Santi was not compensated at all during her training period.

33.     From in or around November 2011 through in or around June 2015, Ms. Santi was paid a weekly salary gradually increasing from $150 per week to $750 per week.

34.     During this time, Ms. Santi's duties included scouring the Internet for hip-hop and pop culture news to include on VladTV.com, posting links to VladTV.com from various fake social media accounts in order to create the impression of high traffic to the website, and distributing the VladTV newsletter.

35.     At all times, Ms. Santi was given discrete tasks by her then-supervisor Sunny Singh (who received his instructions from Mr. Lyubovny) to complete.

36.     Ms. Santi never exercised independent judgment or discretion.

37.     Despite this, other than a few sporadic payments in 2013 and 2014, Ms. Santi never received overtime compensation.

38.     In or around July 2015, Ms. Santi's salary was increased to approximately $60,000 per week.

39.     Still, Ms. Santi performed all of her work by way of discrete tasks, at this point assigned to her directly by Mr. Lyubovny.

40.     Ms. Santi's added responsibilities included uploading videos to YouTube (selected and titled by Mr. Lyubovny) and cross-posting content to different social media platforms in accordance with Mr. Lyubovny's directives.

41.     While Ms. Santi's job description included purportedly overseeing the writing staff, in practice, this was done directly by Mr. Lyubovny.

42.     Indeed, Mr. Lyubovny communicated instructions to the writing staff himself, rarely even copying Ms. Santi on the communications.

43.     Still, Ms. Santi exercised no independent judgment or discretion in her job.

44.     In or around March 2017, Defendants increased Ms. Santi's salary to $63,000.

45.     However, Ms. Santi's job duties did not change whatsoever.

46.     For the duration of Ms. Santi's employment, Defendants denied her overtime compensation for the approximately ten hours of overtime work she performed each week.

**B.      VladTV's Culture of Racism and Misogyny**

47.     In addition to unlawfully denying Ms. Santi (and other VladTV employees) overtime compensation, Defendants fostered a work environment in which employees were subjected to constant inappropriate and discriminatory comments.

48. This hostile work environment persisted throughout Ms. Santi's employment with Defendants.

49. Over the last approximately two years of her employment, the hostility towards Ms. Santi escalated and ultimately became untenable.

50. In late 2015, for example, Mr. Lyubovny asked Ms. Santi whether she liked the new chairs he had purchased for the office.

51. Ms. Santi responded that, because she is petite in size, she kept slipping through the backs of the chairs, making them somewhat uncomfortable for her.

52. Mr. Lyubovny then told Ms. Santi, in the presence of several other employees, "***You should get ass shots, or whatever it is women are putting into their behinds these days***."

53. Mr. Lyubovny also mentioned repeatedly, including in videos posted to VladTV.com, that he would never sleep with his female subordinates, even though no one ever asked him whether he would.

54. Needless to say, these comments evince strong discriminatory animus against Ms. Santi, and women generally.

55. Moreover, from April 2016 through June 2017, Ms. Santi worked alongside a male Video Manager.

56. During this time, Ms. Santi consistently outperformed the male Video Manager.

57. However, time and time again, Mr. Lyubovny gave the male Video Manager credit for Ms. Santi's work.

58. Further, Mr. Lyubovny took every opportunity to reprimand Ms. Santi, such as by screaming at her for not immediately answering text messages and phone calls on weekends.

59. The male Video Manager, on the other hand, continually showed up to work late,

failed to complete tasks on time, and even refused work assigned to him by Mr. Lyubovny, yet he was never reprimanded and rarely asked to work weekends.

60.     In mid-2017, Ms. Santi approached Mr. Lyubovny to complain about the blatantly disparate treatment to which she was being subjected based on her gender.

61.     Mr. Lyubovny explained to Ms. Santi, in no uncertain terms, that "*[He] is a man, so the communication will always be different*."

62.     Further, in July 2017, Ms. Santi complained to Mr. Lyubovny that some of the content he asked her to post on the website was offensive and, specifically, painted Black and African-American people in a stereotypical and offensive light.

63.      In response, Mr. Lyubovny told Ms. Santi that she should not be concerned because "*racism isn't as bad anymore*" and "*interracial marriage is legal and Black people aren't slaves anymore*."

64.     Apparently, Mr. Lyubovny felt that this twisted logic justified his creating content that demeaned Black and African-American people and ignoring Ms. Santi's complaint.

65.     Ms. Santi told Mr. Lyubovny that the conversation made her uncomfortable, but Mr. Lyubovny ignored her and continued to attempt to justify the content on his website with other remarks and arguments that further evinced his racially discriminatory animus.

66.     Later that month, Mr. Lyubovny's conduct and the content he chose for the website had offended so many people that VladTV held a Company-wide meeting for employees to discuss their grievances.

67.     Shortly after this meeting, Ms. Santi approached Ms. Edwards to complain privately about Mr. Lyubovny's racist comments.

8

68.     Ms. Edwards dismissed the complaint, claiming that, because Ms. Santi is a Black woman, the content on the website was not "for" her, so she should not be offended by it.

69.     Ms. Edwards said nothing to address Mr. Lyubovny's comment about slavery and interracial marriage, which were far more concerning to Ms. Santi than the content on VladTV.com

70.     Mr. Lyubovny had made similar remarks to Ms. Santi, telling her that, as a Black woman, she might not be a good fit at VladTV because she was offended too easily.

71.     Treatment like this caused several female VladTV employees to quit, as they could not handle the daily discriminatory treatment by Mr. Lyubovny.

72.     Recently, in January 2018 a Black, female employee notified Defendants via email that she was leaving the Company, describing Mr. Lyubovny as a "tyrant" and the work environment as "toxic."

73.     In addition to the mistreatment to which she was herself subjected, this employee cited Mr. Lyubovny's condescending and unprofessional treatment of Ms. Santi as a reason for her departure.

## C.     Ms. Santi's Disclosure of Her Pregnancy, Resulting in the Exacerbation of the Hostile Work Environment at VladTV

74.     On August 10, 2017, Ms. Santi disclosed to Defendants that she was pregnant, and later approached Ms. Edwards to discuss taking time off for maternity leave.

75.     After sharing this news with Mr. Lyubovny and Ms. Edwards, the hostile environment to which Ms. Santi had been subjected for the previous several years only escalated further.

76.     Indeed, roughly two weeks after disclosing her pregnancy, Ms. Santi suffered a bout of morning sickness at work.

77.     Rather than expressing sympathy or asking how she was feeling, Mr. Lyubovny

9

chastised Ms. Santi for coming to work sick as a means to receive a pay check without working, and subsequently demanded that she go home for the day.

78.     As Ms. Santi would soon learn, this lack of sensitivity and rigidity with respect to basic pregnancy accommodations was systemic within the Company.

79.     Notably, when several non-pregnant staff members had previous gotten sick at work, Mr. Lyubovny calmly asked them if they would like to go home, and generally treated them with respect.

80.     The stark contrast between Defendants' response to Ms. Santi's morning sickness and their treatment of other sick employees again evinces discriminatory animus.

81.     Similarly, during a snowstorm in January 2018, when Ms. Santi asked whether she could work from home for the day to avoid icy conditions and potential harm to her unborn child, she was reprimanded by Mr. Lyubovny and Ms. Edwards.

82.     However, they took no issue with other, non-pregnant employees who failed to show up to work because, for example, they too did not wish to travel in inclement weather or simply forgot that the office was open.

83.     In mid-August 2017, Mr. Lyubovny called Ms. Santi to yell at her for not immediately answering her phone when he called.

84.     He went on to tell her that she could not work in the office if she continued to suffer morning sickness at work.

85.     Ms. Santi objected that she had experienced morning sickness on only one occasion and tried to explain that morning sickness is to be expected during the early stages of pregnancy.

86.     Mr. Lyubovny did not seem to care, and instead told Ms. Santi that he intended to cut her pay and require her to work from home.

87.     The very next day, Ms. Edwards called Ms. Santi and similarly accused her of "always" being sick since she had become pregnant, despite the fact that she had only experienced morning sickness at work on a single occasion.

88.     Ms. Edwards went on to tell Ms. Santi that, when Ms. Edwards was pregnant, working was not feasible.

89.     Ms. Edwards was obviously trying to convince Ms. Santi to quit her job, in yet another showing of extreme discriminatory animus by Defendants.

90.     When Ms. Santi explained that she fully intended to work throughout her pregnancy, Ms. Edwards confirmed that Defendants would indeed be cutting Ms. Santi's hours and requiring that she work exclusively from home.

91.     When Ms. Santi objected to this blatantly discriminatory change to the terms and conditions of her employment, Ms. Edwards accused Ms. Santi of somehow being "unprofessional" for doing so.

**D.     Ms. Santi's Protected Complaints and the Company's Subsequent Retaliation**

92.     From November 2017 through January 2018, Ms. Santi lodged several additional protected complaints with VladTV, all of which either fell on deaf ears or were met with swift retaliation by Defendants.

93.     First, in November 2017, Mr. Lyubovny interviewed rapper "Boosie" for the website.

94.     Prior to the interview, a member of Boosie's entourage inappropriately touched Ms. Santi's stomach and breast, in addition to making sexually-charged comments to another female employee.

11

95.     When Ms. Santi raised the issue with Mr. Lyubovny, he was quick to scream at Ms. Santi and blame her for not handling the situation better.

96.     It is unclear what Mr. Lyubovny expected Ms. Santi to have done differently, other than avoid being groped and harassed.

97.     Ms. Santi asked to speak about the incident later, as she could not handle being yelled at any longer.

98.     After a few hours, Ms. Santi called Mr. Lyubovny to discuss it further, and he continued to berate her.

99.     The extreme stress from this incident caused Ms. Santi to spend approximately 90 minutes vomiting in the office bathroom.

100.    One week later, Ms. Santi filed a formal report detailing the incident with Boosie's entourage, explicitly mentioning that she had been touched on her breast and complaining about how Mr. Lyubovny had handled the situation.

101.    Mr. Lyubovny became furious, accused Ms. Santi of "talking back" to him, and threatened that Ms. Santi would be "in for a rude awakening" when Ms. Edwards came to the office to meet with her.

102.    This threat speaks volumes about the true nature of VladTV's Human Resources department.

103.    Indeed, employees at VladTV are not given a legitimate means to report unlawful activity, as Ms. Edwards is married to Mr. Lyubovny.

104.    Further, Mr. Lyubovny apparently considers intimidating employees from filing complaints to be part of Ms. Edwards's job description.

12

105.    Moreover, both Mr. Lyubovny and Ms. Edwards informed Ms. Santi and other employees, on multiple occasions, that all complaints made to Ms. Edwards are shared with Mr. Lyubovny.

106.    This is entirely inappropriate and seemingly intended to chill the use of VladTV's internal reporting mechanisms.

107.    When Ms. Edwards finally met with Ms. Santi on December 1, 2017, Ms. Edwards told Ms. Santi that violent (and retaliatory) outbursts like the most recent one Ms. Santi had suffered are "just [Mr. Lyubovny's] personality."

108.    Ms. Edwards then advised Ms. Santi that she should not "take it personally" and simply learn to "deal with it."

109.    Ms. Edwards explained that, as Mr. Lyubovny's wife, she has had to learn to do the same over the years.

110.    Ms. Santi was, of course, Mr. Lyubovny's employee, not his wife.

111.    Therefore, she was entitled to be free from retaliation for making complaints to Human Resources regarding discrimination, irrespective of Mr. Lyubovny's proclivity for berating employees who spoke up about discrimination.

112.    On January 4, 2018 and January 10, 2018, Ms. Santi sent Ms. Edwards two detailed emails describing some of the discrimination and retaliation to which she had been subjected by Defendants.

113.    Notably, one of the emails mentioned that, in November 2017, Mr. Lyubovny told her, "*As a woman, your only purpose in life is to have children*."

13

114.    Ms. Edwards responded to these complaints by, incredibly, feigning shock and claiming that Ms. Santi had never previously complained about discrimination or sexual harassment.

115.    Ms. Edwards also gratuitously claimed that Ms. Santi never mentioned that a member of Boosie's entourage had touched her breast, despite the fact that Ms. Santi's incident report clearly shows otherwise.

116.    Ms. Edwards's response makes clear that her role at VladTV was not to legitimately address complaints of discrimination, but instead to suppress those complaints.

117.    Unsurprisingly, Ms. Santi was never made aware of any investigation by Defendants into any of her complaints.

**E.    Defendants' Failure to Provide Reasonable Accommodations for Ms. Santi's Disabilities, Resulting In Ms. Santi's Constructive Discharge**

118.    On February 12, 2018, Ms. Santi emailed Ms. Edwards to request a reasonable accommodation due to a pregnancy-related medical condition.

119.    Specifically, Ms. Santi requested to work from home for the remainder of her pregnancy because her hours, as well as the high temperature of her office and being forced to sit up right for a full day, were causing dizzy spells and nausea.

120.    Further, these conditions exposed Ms. Santi to hypertension and potential harm to her child.

121.    In response to Ms. Santi's request, Defendants promised to allow Ms. Santi to start work one hour later in the day – setting her start time at 10:00 a.m., as opposed to 9:00 a.m. – and, further, relocate Ms. Santi to a cooler office with better ventilation.

122.    However, VladTV completely failed to honor these promises and, in reality, provided no accommodation at all.

123.    The very first day after Defendants had agreed to provide the aforementioned accommodations, Mr. Lyubovny began calling and emailing Ms. Santi incessantly at her usual start time of 9:00 a.m. to berate her about failing to report to work.

124.    Ms. Santi explained to Mr. Lyubovny that she and the Company had agreed that her day would begin at 10:00 a.m. to accommodate her pregnancy-related condition.

125.    Mr. Lyubovny refused to acknowledge this, instead insisting that Ms. Santi come to work immediately notwithstanding her medical condition.

126.    When Ms. Santi arrived at work, she discovered that no accommodations had been made to reduce the temperature of her office.

127.    Put differently, while Defendants had given the impression of engaging in a genuine interactive process to accommodate Ms. Santi, they reneged on all of their promises and provided no accommodation at all.

128.    Accordingly, on February 21, 2017, Ms. Santi was constructively discharged due to the continued hostile work environment at VladTV and her genuine fear that her unborn child's health may be negatively impacted by Defendants' unwillingness to provide any accommodation for her pregnancy-related health condition.

### FIRST CAUSE OF ACTION
### VIOLATIONS OF THE FLSA:  FAILURE TO PAY OVERTIME

129.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

130.    During the full statutory period, Plaintiff was protected by the provisions of the FLSA, 29 U.S.C. §§ 201, *et seq.*, and all applicable regulations thereunder.

131.    The FLSA requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

132.    Plaintiff was not exempt from the requirement that her employer pay her overtime wages, and thus she is entitled to be paid at a rate not less than one and one-half times her regular rate of pay for all hours worked in excess of 40 hours in a workweek.

133.    Throughout the relevant period, Defendants engaged in a policy and practice of failing to compensate Plaintiff at a rate not less than one and one-half times her regular rate of pay for all hours worked in excess of 40 hours in a workweek.

134.    As a result of Defendants' failure to compensate Plaintiff at a rate not less than one and one-half times her regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated the FLSA and/or applicable regulations thereunder.

135.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff in accordance with the FLSA.

136.    Defendants' violations of the FLSA have significantly damaged Plaintiff and entitle her to recover the total amount of her unpaid wages, an additional equal amount in liquidated damages, as well as attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE NYLL:  FAILURE TO PAY OVERTIME

137.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

138.    During the full statutory period, Plaintiff was protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and all applicable regulations thereunder.

139.    The NYLL requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

140.    Plaintiff was not exempt from the requirement that her employer pay her overtime wages, and thus she is entitled to be paid at a rate not less than one and one-half times her regular rate of pay for all hours worked in excess of 40 hours in a workweek.

141.    Throughout the relevant period, Defendants engaged in a policy and practice of failing to compensate Plaintiff at a rate not less than one and one-half times her regular rate of pay for all hours worked in excess of 40 hours in a workweek.

142.    As a result of Defendants' failure to compensate Plaintiff at a rate not less than one and one-half times her regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

143.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff in accordance with the NYLL.

144.    Defendants' violations of the NYLL have significantly damaged Plaintiff and entitle her to recover the total amount of her unpaid wages, an additional equal amount in liquidated damages, as well as attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF THE FMLA:  RETALIATION

145.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

146.    During the full statutory period, Plaintiff was protected by the provisions of the FMLA, 29 U.S.C §§ 2601, *et seq.*, and applicable regulations thereunder.

147.    Specifically, Plaintiff was a full-time employee of Defendants and, at all relevant

times, worked at least 1,250 hours in any 12-month period, including the 12-month period preceding her termination.

148.    As set forth above, after disclosing her pregnancy, Plaintiff notified Defendants of her intention to take FMLA-qualifying maternity leave following the birth of her child.

149.    By the actions described above, among others, Defendants unlawfully retaliated against Plaintiff for exercising her rights under the FMLA by, *inter alia*, disparately enforcing employment policies against her, threatening to reduce her compensation, pressuring her to quit her job, berating her, and refusing to provide reasonable accommodations for her pregnancy-related medical conditions.

150.    As a direct and proximate result of Defendants' unlawful retaliation in violation of the FMLA, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of damages.

151.    Plaintiff is further entitled to an award of liquidated damages, as well as attorneys' fees and costs.

<u>**FOURTH CAUSE OF ACTION**</u>
<u>**VIOLATIONS OF SECTION 1981:  DISCRIMINATION**</u>

152.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

153.    During the full statutory period, Plaintiff was protected by the provisions of Section 1981, 42 U.S.C. § 1981, and all applicable regulations thereunder.

154.    By the actions described above, among others, Defendants have discriminated against Plaintiff based on her race, by, *inter alia*, subjecting her to a hostile work environment.

155.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of damages.

156.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the Section 1981, Plaintiff has suffered, and continues to suffer, emotional distress for which she is entitled to an award of compensatory damages.

157.    Defendants' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION
## VIOLATIONS OF SECTION 1981:  RETALIATION

158.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

159.    During the full statutory period, Plaintiff was protected by the provisions of Section 1981, 42 U.S.C. § 1981, and all applicable regulations thereunder.

160.    As set forth above, Plaintiff made multiple protected complaints to Defendants regarding discrimination on the basis of race and color.

161.    Defendants retaliated against Plaintiff for her protected activity by, *inter alia*, disparately enforcing employment policies against her, berating her, and refusing to provide reasonable accommodations for her pregnancy-related medical conditions.

162.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of damages.

163.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in

violation of the Section 1981, Plaintiff has suffered, and continues to suffer, emotional distress for which she is entitled to an award of compensatory damages.

164.     Defendants' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYSHRL:  REASONABLE ACCOMMODATIONS**

165.     Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

166.     During the full statutory period, Plaintiff was protected by the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

167.     By the actions described above, among others, Defendants have failed to provide Plaintiff reasonable accommodations in connection with her pregnancy-related conditions.

168.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continue to suffer, monetary and/or economic harm for which she is entitled to an award of damages.

169.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continue to suffer, emotional distress for which she is entitled to an award of compensatory damages.

170.     Defendants' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

171.     Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYSHRL:  RACE DISCRIMINATION**

172.     Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

173.     During the full statutory period, Plaintiff was protected by the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

174.     By the actions described above, among others, Defendants have discriminated against Plaintiff based on her race, by, *inter alia*, subjecting her to a hostile work environment.

175.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continue to suffer, monetary and/or economic harm for which she is entitled to an award of damages.

176.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continue to suffer, emotional distress for which she is entitled to an award of compensatory damages.

177.     Defendants' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

178.     Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

**EIGHTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYSHRL:  GENDER DISCRIMINATION**

179.     Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

180.     During the full statutory period, Plaintiff was protected by the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

181.    By the actions described above, among others, Defendants have discriminated against Plaintiff based on her gender and/or pregnancy, by, *inter alia*, subjecting her to a hostile work environment.

182.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continue to suffer, monetary and/or economic harm for which she is entitled to an award of damages.

183.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continue to suffer, emotional distress for which she is entitled to an award of compensatory damages.

184.    Defendants' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

185.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## NINTH CAUSE OF ACTION
## VIOLATIONS OF THE NYSHRL:  RETALIATION

186.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

187.    During the full statutory period, Plaintiff was protected by the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

188.    As set forth above, Plaintiff made multiple protected complaints to Defendants regarding discrimination on the basis of race, color, and sex.

189.    Defendants retaliated against Plaintiff for her protected activity by, *inter alia*, disparately enforcing employment policies against her, berating her, and refusing to provide reasonable accommodations for her pregnancy-related medical conditions.

190.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continue to suffer, monetary and/or economic harm for which she is entitled to an award of damages.

191.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continue to suffer, emotional distress for which she is entitled to an award of compensatory damages.

192.     Defendants' unlawful and retaliatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

193.     Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

**TENTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYCHRL:  REASONABLE ACCOMMODATIONS**

194.     Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

195.     During the full statutory period, Plaintiff was protected by the provisions of the NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq*., and all applicable regulations thereunder.

196.     By the actions described above, among others, Defendants have failed to provide Plaintiff reasonable accommodations in connection with her pregnancy-related conditions.

197.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continue to suffer, monetary and/or economic harm for which she is entitled to an award of damages.

198.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continue to suffer, emotional distress for which she is entitled to an award of compensatory damages.

199.     Defendants' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

200.     Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## ELEVENTH CAUSE OF ACTION
## VIOLATIONS OF THE NYCHRL:  RACE DISCRIMINATION

201.     Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

202.     During the full statutory period, Plaintiff was protected by the provisions of the NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq*., and all applicable regulations thereunder.

203.     By the actions described above, among others, Defendants have discriminated against Plaintiff based on her race, by, *inter alia*, subjecting her to a hostile work environment.

204.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continue to suffer, monetary and/or economic harm for which she is entitled to an award of damages.

205.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continue to suffer, emotional distress for which she is entitled to an award of compensatory damages.

206.     Defendants' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

207.     Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## TWELFTH CAUSE OF ACTION
## VIOLATIONS OF THE NYCHRL:  GENDER DISCRIMINATION

208.     Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

209.     During the full statutory period, Plaintiff was protected by the provisions of the NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq*., and all applicable regulations thereunder.

210.     By the actions described above, among others, Defendants have discriminated against Plaintiff based on her gender and/or pregnancy, by, *inter alia*, subjecting her to a hostile work environment.

211.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continue to suffer, monetary and/or economic harm for which she is entitled to an award of damages.

212.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continue to suffer, emotional distress for which she is entitled to an award of compensatory damages.

213.     Defendants' unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

214.     Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## THIRTEENTH CAUSE OF ACTION
## VIOLATIONS OF THE NYCHRL:  RETALIATION

215.     Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

216.    During the full statutory period, Plaintiff was protected by the provisions of the NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq*., and all applicable regulations thereunder.

217.    As set forth above, Plaintiff made multiple protected complaints to Defendants regarding discrimination on the basis of race, color, and sex.

218.    Defendants retaliated against Plaintiff for her protected activity by, *inter alia*, disparately enforcing employment policies against her, berating her, and refusing to provide reasonable accommodations for her pregnancy-related medical conditions.

219.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continue to suffer, monetary and/or economic harm for which she is entitled to an award of damages.

220.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continue to suffer, emotional distress for which she is entitled to an award of compensatory damages.

221.    Defendants' unlawful and retaliatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

222.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A.    Declare that the practices complained of herein are unlawful under applicable federal, State, and City law;

B.    Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.      Grant Plaintiff an award of damages sustained as a result of Defendants' violations of the FLSA and/or NYLL, plus such pre-judgment interest;

D.      Grant Plaintiff an award of damages sustained as a result of Defendants' violations of the FMLA, Section 1981, the NYSHRL, and/or the NYCHRL in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for economic harm;

E.      Grant Plaintiff an award of damages sustained as a result of Defendants' violations of Section 1981, the NYSHRL, and/or the NYCHRL in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

F.      Grant Plaintiff an award of punitive damages, in an amount to be determined at trial, as Defendants' violations of Section 1981, the NYSHRL, and/or the NYCHRL were willful and/or without good faith basis;

G.      Grant Plaintiff an additional award of damages as liquidated damages because Defendants' violations of the FLSA, NYLL, and/or FMLA were willful and/or without a good faith basis;

H.      Grant Plaintiff an award of costs that she has incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law;

I.      Grant Plaintiff an award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus pre-judgment interest; and

J.      Grant such other and further relief as the Court may deem just and proper.

27

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all issues of fact and damages.

Dated: April 6, 2018

**FARUQI & FARUQI, LLP**

By: <u>*/s/Innessa M. Huot*</u>
    Innessa M. Huot
    Alex J. Hartzband
    Patrick J. Collopy

685 Third Avenue, 26th Floor
New York, New York 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
ihuot@faruqilaw.com
ahartzband@faruqilaw.com
pcollopy@faruqilaw.com

*Attorneys for Plaintiff*