UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTINA SANTI,

                Plaintiff,

-against-

HOT IN HERE, INC., VLAD LYUBOVNY,
*in his individual and professional capacities*, and
LATAYA EDWARDS, *in her individual and
professional capacities*,

                Defendants.

**OPINION AND ORDER**

18 Civ. 03028 (ER)

Ramos, D.J.:

    Christina Santi, a Black woman, brings this action against her former employer, a media company named Hot in Here, Inc. ("VladTV"), and two of its executives, Vlad Lyubovny and Lataya Edwards, alleging various federal and state employment law violations. Santi moves for leave to file a third amended complaint. For the reasons set forth below. Santi's motion is GRANTED.

**I.    Background**

    Hot in Here, Inc., owns VladTV.com, a hip-hop and popular culture website. Doc. 39, 5. Lyubovny, VladTV's Chief Executive Officer, and Edwards, its Director of Human Resources, are married. *Id.* at 4. VladTV employed Santi from October 2011 until February 2018. *Id.* at 2–3. Throughout this period, Santi worked approximately 50 hours a week. *Id.* at 5. She alleges that she did not receive payment for a brief training period at the beginning of her employment, but that her pay gradually increased from $150 per week in November 2011 to $750 per week in June 2015. *Id.* In July 2015, she became a salaried employee, and her salary rose from $60,000 per year in July 2015 to $63,000 per year in March 2017. *Id.* at 5–6. With a few exceptions, she

claims that she did not receive overtime compensation. *Id.* at 5. Santi alleges that she was constructively discharged on February 21, 2018. *Id.* at 15.

From 2011 to 2015, Santi, under the direction of a supervisor, performed research, generated content and distributed a newsletter for VladTV. *Id.* at 5. From 2015 until her termination, Santi, pursuant to Lyubovny's instructions, shared VladTV's content on different social media platforms. *Id.* at 6.

Santi alleges that during her employment Defendants made racially and sexually inappropriate comments to her. For example, on one occasion, Lyubovny asked Santi whether she found an office chair uncomfortable and, after Santi told him that the chair did not fit someone of her size, he allegedly responded by saying, "You should get ass shots, or whatever it is women are putting into their behinds these days." *Id.* at 7. In another instance, Lyubovny told Santi, "As a woman, your only purpose in life is to have children." *Id.* at 13. Santi does not provide any context for this second comment. Additionally, Lyobovny purportedly directed Santi to post stereotypical representations of Black people on VladTV on numerous occasions, despite the fact that the content made her uncomfortable. *Id.* at 8. When Santi complained to Edwards, she said, "the content on the website was not 'for' her, so she should not be offended by it." *Id.* at 8. Lyubovny made similar comments. *Id.*

Santi also alleges that Defendants treated her differently than a male colleague by giving the male colleague credit for Santi's work and by overlooking his shortcomings, such as his tardiness and his refusal to complete assigned tasks, while at the same time reprimanding Santi for not answering messages over the weekend. *Id.* at 7–8.

When Santi confronted Lyubovny about these comments and treatment, he told her, "racism isn't as bad anymore," "interracial marriage is legal," "Black people aren't slaves

anymore," and the allegedly favored colleague "is a man, so the communication will always be different." *Id*.

In another allegation, Santi claims that she was subjected to sexually inappropriate conduct by a man associated with a musician being interviewed by VladTV but that Defendants failed to correct it. Specifically, in November 2017, Lyubovny interviewed a rapper for the website and a member of the rapper's entourage touched Santi's stomach and breast inappropriately and made sexual comments to another female employee. *Id.* at 11. Santi complained about the man's conduct to Lyubovny and he berated her. *Id*. at 12. Santi filed a formal complaint and Lyubovny accused her of "talking back" and told her that she would be "in for a rude awakening" when Edwards spoke with her about the complaint. *Id*. at 12. In response to Santi's complaint, Edwards told her not to "take it personally" and to "deal with it." *Id.* at 12–13. Santi alleges that because Edwards was Lyubovny's wife, she sought to suppress—not legitimately address—complaints. *Id.* at 14.

Meanwhile, on August 10, 2017, Santi told Lyubovny and Edwards that she was pregnant. *Id.* at 9. According to Santi, the hostile work environment to which she had been subjected only worsened. For example, while she was experiencing morning sickness in the weeks after her announcement, Lyubovny accused her of "coming to work sick as a means to receive a pay check without working" and ordered her to work from home. Edwards told Santi that Defendants would reduce her hours and require her to work from home until her morning sickness subsided. *Id.* at 9. On another occasion, he required her to come to work during a snowstorm, despite her fear of falling and injuring her unborn child. *Id.* at 9–10. When Santi protested, Edwards accused her of being "unprofessional." *Id.* at 11. According to Santi, they treated sick, non-pregnant employees better. *Id.*

3

On February 12, 2018, Santi asked Edwards if she could work from home for the remainder of her pregnancy because her hours and office temperature made her dizzy, nauseous, and vulnerable to hypertension and cardiomyopathy. *Id.* at 14. Defendants denied her request and, on February 21, 2018, constructively discharged her. *Id.* at 14–15.

Santi has filed three complaints in this case: The initial complaint, filed on April 5, 2018, alleged violations under the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), Family and Medical Leave Act ("FMLA"), New York State Human Rights Law ("NYSHRL"), New York City Human Rights Law ("NYCHRL"), and 42 U.S.C. § 1981 ("Section 1981") for overtime wage violations, gender discrimination, race discrimination, pregnancy discrimination, and retaliation. Doc. 1, 15–26. On April 23, 2018, she filed a first amended complaint as of right and dropped her FMLA claim. Doc. 17, 15–25. On December 11, 2018, she filed a second amended complaint, with Defendants' consent, and added Title VII claims, 42 U.S.C. §§ 2000e-2, 2000e-3, and Americans with Disabilities Act ("ADA") claims for race discrimination, gender discrimination, pregnancy discrimination, and retaliation. Doc. 32, 19–21.[1] Other than adding information about receiving a Notice of Right to Sue from the Equal Employment Opportunity Commission, the factual allegations are the same in all three complaints. Doc. 37-1, 4.

On May 8, 2018, Defendants answered Santi's first amended complaint and brought counterclaims. Doc. 22. Specifically, they allege that Santi made a negligent misrepresentation

---

[1] The Second Amended Complaint asserts sixteen causes of action: (1) failure to pay overtime in violation of FLSA; (2) failure to pay overtime in violation of NYLL; (3) race discrimination in violation of Section 1981; (4) retaliation in violation of Section 1981; (5) race discrimination in violation of Title VII; (6) gender discrimination in violation of Title VII; (7) retaliation in violation of Title VII; (8) denial of reasonable accommodations in violation of the ADA; (9) denial of reasonable accommodations in violation of NYSHRL; (10) race discrimination in violation of NYSHRL; (11) gender discrimination in violation of NYSHRL; (12) retaliation in violation of NYSHRL; (13) denial of reasonable accommodations in violation of NYCHRL; (14) race discrimination in violation of NYCHRL; (15) gender discrimination in violation of NYCHRL; and (16) retaliation in violation of NYCHRL.

4

and breached her fiduciary duty to the company by submitting a job application to the company under an alias, "Timothy Roberts," and then by hiring herself under this name. *Id.* at 35–36. In addition, they allege that Santi breached her contract with the company and misappropriated its property by using its grammar correction service, Grammarly, outside of her employment. *Id.* at 36–37.

In the instant motion, Santi seeks to file a third amended complaint in order to add five additional claims: two claims under FLSA and NYLL for retaliation based on the filing of counterclaims by Defendants; and three additional claims under NYLL for not providing a pay notice, for not furnishing pay statements, and for not paying a minimum wage.

## II. Discussion

Pursuant to Federal Rule of Civil Procedure 15(a)(1), a party may amend its pleading as a matter of course 21 days after serving it, 21 days after service of a responsive pleading, or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave" but "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). As a general rule, leave to amend a complaint should be freely granted. *Jin v. Metro. Life Ins. Co.,* 310 F.3d 84, 101 (2d Cir. 2002). District courts have broad discretion in deciding whether to grant leave to amend, *id.*, and "it is rare that such leave should be denied," *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). However, where the amendment would be futile or would result in undue prejudice to the opposing party, denying leave to amend is proper. *Id*. "An amendment to a pleading is futile if the proposed claim could not withstand a

5

motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *Lucente v. IBM*, 310 F.3d 243, 258 (2d Cir. 2002). The Court grants Santi's motion to amend to add all five additional claims.[2]

**A.     FLSA and NYLL Retaliation**

Santi claims that Defendants retaliated against her by filing counterclaims a little over a month after she filed FLSA and NYLL claims against them. The FLSA forbids "any person" from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." 29 U.S.C. § 215(a)(3). "FLSA retaliation claims are subject to the three-step burden-shifting framework established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010). Under this framework, "[t]he plaintiff has the initial burden to present a *prima facie* case of discrimination;" "[t]hen, the defendant has a burden of production to articulate some legitimate, nondiscriminatory reason for the adverse action;" and "[f]inally, the plaintiff has the burden of persuasion to prove by a preponderance of the evidence that the improper reason was the true reason." *Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872, 876 (2d Cir. 1988) (citations and quotation marks omitted). "[A] plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas,* at least as the test was originally formulated, to defeat a motion to dismiss." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). However, if a plaintiff "alleges facts that would be sufficient to establish the other elements of

---

[2] Defendants concede that Santi's proposed NYLL claim for failure to pay minimum wage is not futile. Doc. 34, 6 n.1. They do, however, argue that Santi's § 652 claim may not, as a matter of law, impose liability for violations before 2012 because NYLL's six-year statute of limitations would bar them. *See* N.Y. Lab. Law § 663 ("Notwithstanding any other provision of law, an action to recover upon a liability imposed by this article must be commenced within six years."). Because Santi alleges violations within the limitations period, the Court need not resolve this issue.

a prima facie case of retaliation, her allegations [are] more than sufficient to withstand [a] motion to dismiss." *Littlejohn v. City of New York*, 795 F.3d 297, 320 (2d Cir. 2015).

To make a prima facie case of retaliation under the FLSA, Santi must show "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins*, 626 F.3d at 53. "An employment action disadvantages an employee if it well might have dissuaded a reasonable worker from making or supporting [similar] charge[s]." *Id*. (internal quotation marks and citation omitted). Like FLSA anti-retaliation claims, "[r]etaliation claims brought under . . . NYLL are generally governed by the same *McDonnell Douglas* burden-shifting framework as discrimination claims." *DeLuca v. Sirius XM Radio, Inc.*, No. 12 Civ. 8239 CM, 2017 WL 3671038, at *23 (S.D.N.Y. Aug. 7, 2017). *See also Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 472 (S.D.N.Y. 2013) (applying the same standard for anti-retaliation claims brought under FLSA and NYLL); *Azeez v. Ramaiah*, No. 14 Civ. 5623 PAE, 2015 WL 1637871, at *8 (S.D.N.Y. Apr. 9, 2015) (describing FLSA's anti-retaliation provision and NYLL's anti-retaliation provision as "closely analogous").

Santi engaged in protected activity by filing her complaint. *Mullins*, 626 F.3d at 53 (describing the filing of a FLSA complaint as an example of protected activity). The Court finds that Santi's allegations also satisfy the second prong of the test. As a preliminary matter, in *Robinson v. Shell Oil Co.*, the Supreme Court "h[e]ld that former employees are included within" Title VII's protections. 519 U.S. 337, 346 (1997). Thus, for example, in *Pantchenko v. C. B. Dolge Co.*, the Second Circuit held that denying a former employee a post-employment reference letter could harm her future employment prospects and, thus, could amount to retaliation under

Title VII. 581 F.2d 1052, 1055 (2d Cir. 1978) (per curiam) (reversing a district court's grant of summary judgment on this issue).[3]

The foregoing authorities have been applied by district courts in circumstances similar to this case. *Jian Zhong Li v. Oliver King Enterprises, Inc.*, No. 14-CV-9293 VEC, 2015 WL 4643145, at *3 (S.D.N.Y. Aug. 4, 2015) ("[D]istrict courts in this Circuit have applied the Supreme Court's reasoning in *Robinson* to FLSA retaliation claims, finding that in some circumstances plaintiffs can bring retaliation claims against former employers for post-employment conduct.") (listing cases).

*Fei v. WestLB AG* is particularly instructive. No. 07 Civ. 8785 (FM), 2008 WL 594768, at *1 (S.D.N.Y. Mar. 5, 2008). There, the plaintiff sued his former employer for FLSA violations and then, in a counterclaim, the former employer alleged that the plaintiff had misappropriated highly confidential personnel information. *Id.* The plaintiff moved for leave to amend his complaint to bring a retaliation claim based on these counterclaims. *Id.* The court allowed the plaintiff to add the retaliation claim, finding that "[c]ounterclaims may not as a matter of law fail to qualify as retaliatory" and further holding that "[l]awsuits in response to a former employee's attempt to vindicate his rights can constitute retaliation." *Id.* at *3. *See also Yankelevitz v. Cornell Univ.*, No. 95 Civ. 4593 (PKL), 1996 WL 447749, at *4 (S.D.N.Y. Aug. 7, 1996) (holding, in the motion to strike context, that "the Court is unwilling to adopt a rule stating that compulsory counterclaims, or any other legal cause of action, cannot, as a matter of law, constitute retaliation in violation of the employment discrimination laws.").

---

[3] While *Robinson* and *Pantchenko* are Title VII cases, such cases often guide the Second Circuit's decisions in FLSA cases, including the interpretation of the anti-retaliation provision in the FLSA. For example, the Circuit looked to Title VII in instructing district courts to follow the *McDonnell Douglas* burden-shifting framework in FLSA retaliation cases. *Mullins*, 626 F.3d at 53. In addition, it referenced the FLSA in *Pantchenko* in holding that the denial of a post-employment reference letter could amount to retaliation under Title VII. 581 F.2d at 1055. Indeed, the standard for the very prong at issue here derives from a Title VII case, *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006). *Mullins*, 626 F.3d at 53.

8

As the Supreme Court observed in a slightly different context when interpreting the National Labor Relations Act's prohibition on unfair labor practices, "A lawsuit no doubt may be used by an employer as a powerful instrument of coercion or retaliation" because "by suing an employee who files charges . . . , an employer can place its employees on notice that anyone who engages in such conduct is subjecting himself to the possibility of a burdensome lawsuit" and because "[r]egardless of how unmeritorious the employer's suit is, the employee will most likely have to retain counsel and incur substantial legal expenses to defend against it." *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 740–41 (1983).

In their counterclaims, Defendants allege that Santi lied to them and stole their property. She alleges that this caused her significant, presumably reputational, harm. Doc. 31-1, 21 (FLSA), 26 (NYLL). These allegations and the possible financial burden they will impose might well dissuade another worker from bringing similar claims against Defendants. As a result, the Court finds that Defendants' counterclaims disadvantage Santi and satisfy the second prong of the prima facie test.

Santi's proposed third amended complaint also satisfies the third prong of the prima facie test. "[A] causal connection between an adverse action and a plaintiff's protected activity may be established through evidence of retaliatory animus directed against a plaintiff by the defendant, or by showing that the protected activity was closely followed in time by the adverse action." *Mullins*, 626 F.3d at 53 (internal quotation marks and citations omitted). In the Title VII context, the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001). In *Grant v.*

9

*Bethlehem Steel Corp.,* it held that an eight-month gap between an EEOC complaint and retaliatory action suggested a causal relationship. 622 F.2d 43, 45–46 (2d Cir.1980). In *Richardson v. New York State Dep't of Corr. Serv.,* it found that abusive acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier. 180 F.3d 426, 446–47 (2d Cir.1999). And, in *Quinn v. Green Tree Credit Corp.,* it concluded that a termination less than two months after plaintiff filed a sexual harassment complaint with management and ten days after filing a complaint with state human rights office provided prima facie evidence of a causal connection between protected activity and retaliation. 159 F.3d 759, 769 (2d Cir.1998).

In the instant case, Santi filed her original complaint on April 5, 2018, and Defendants filed their counterclaims on May 8, 2018. The temporal proximity between these two events establishes a causal connection at the prima facie stage for FLSA and NYLL retaliation claims. Because Santi's proposed complaint satisfies the three prongs of the prima facie test, the Court finds that it would survive a motion to dismiss and therefore grants Santi's request to add her FLSA and NYLL retaliation claims.

Defendants argue that "[b]eing compulsory, the counterclaims cannot serve as the basis for a retaliation claim" and that the counterclaims "are not 'without merit' or 'totally baseless' and, thus, the retaliation claims are futile." Doc. 34, 9, 11. In cases with different procedural postures, courts within this District have adopted the principle underlying this argument, namely that compulsory and meritorious counterclaims do not qualify as retaliation. In *Eng-Hatcher v. Sprint Nextel Corp.*, a district court granted employers' motion to amend its answer and add counterclaims because the record before the Court did not establish that the counterclaims the defendants sought to assert were "totally baseless." No. 07 Civ. 7350 KNF, 2008 WL 4865194,

10

at *1 (S.D.N.Y. Oct. 31, 2008). Similarly, in *Schanfield v. Sojitz Corp. of America*, another court within this District partially granted an employer's motion for summary judgment on an employee's retaliation claim because "I can see nothing in Title VII or any other anti-discrimination statute that should prevent an employer from bringing a legitimate claim against a current or former employee simply because that employee has complained about what the employee believes to be discriminatory behavior." 663 F. Supp. 2d 305, 342 (S.D.N.Y. 2009) (also noting, "I can conceive of cases in which being sued would qualify as an adverse employment action"). Similarly, in *Rosas v. Balter Sales Co. Inc.*, another court within this District granted an employer's motion for summary judgment because "[t]he filing of counterclaims is only actionable as retaliation where the counterclaims are without any merit." No. 12 Civ. 6557 VSB, 2015 WL 12915807, at *1 (S.D.N.Y. Mar. 30, 2015). These cases do not apply to this situation where Santi seeks leave to amend her complaint and, in any event, do not stand for the proposition that compulsory counterclaims cannot, as a matter of law, constitute retaliation. A counterclaim, like many adverse actions, may be meritorious or not, but that determination cannot be made at the pleading stage without the benefit of discovery. At this point, it suffices to say that the filing of counterclaims, even if compulsory, may constitute retaliatory action.[4]

**B.  Pay Notice and Pay Statement**

Santi alleges that Defendants failed to provide her with accurate pay notices and pay statements. Doc. 33-1, 24 –25. NYLL requires employers to provide "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, . . . allowances, if any, claimed as part of the minimum wage, [and] the regular pay day designated

---

[4] Because the Court finds that even compulsory counterclaims may qualify as adverse employment actions, it need not resolve the parties' dispute about whether the counterclaims are compulsive or permissive.

by the employer." NYLL § 195(1)(a). It further mandates, "For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the notice must state the regular hourly rate and overtime rate of pay." *Id*. NYLL also provides that "every employer shall . . . furnish each employee with a statement with every payment of wages." NYLL § 195(3). Santi alleges that she has not received either a pay notice or a pay statement. Doc. 33-2, 7–8.

Defendants challenge these amendments in two ways. First, they argue that Santi could have asserted these claims in her original complaint and that, "the undue delay in bringing these claims warrants the denial of the relief sought." Doc. 34, 12. "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Block v. First Blood Assocs.*, 988 F.2d 344 (2d Cir. 1993) (internal quotation marks and citation omitted). Defendants have not argued that Santi acted in bad faith or caused Defendants undue prejudice. As a result, the Court denies this challenge.

Second, Defendants assert that Santi's complaint lacks "any allegation that Santi was not timely paid her wages" and argue that "[t]he absence of this allegation provides for an affirmative defense under New York's Labor Law and renders Plaintiff's wage notice claims futile." Doc. 34, 13. For this argument, they rely on N.Y. Lab. Law § 198. That section provides, "In any action . . . to recover damages for violation of [the pay notice and pay statement requirements], it shall be an affirmative defense that (i) the employer made *complete and timely* payment of all wages due pursuant to this article." N.Y. Lab. Law § 198 (1-b) (applying defense to pay notice claim, NYLL § 195(1)) (emphasis added); *id.* at (1-d) (applying defense to pay statement claim, 9 NYLL § 195(3)) (emphasis added). As indicated by the

12

emphasized language, this defense only applies when a complaint fails to allege timely and complete payment. Santi claims that Defendants did not pay her minimum wage or overtime, i.e., complete payment. As a result, this defense fails. Santi may amend her complaint to add these allegations.

## III. Conclusion

For the reasons stated above, Plaintiff's motion for leave to file her proposed third amended complaint is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 31.

It is SO ORDERED.

Dated:   January 22, 2019
        New York, New York

                                                               Edgardo Ramos, U.S.D.J.