**F&F** **FARUQI & FARUQI** LLP  ·  **ATTORNEYS AT LAW**  ·  **NEW YORK**   **CALIFORNIA**   **DELAWARE**   **GEORGIA**   **PENNSYLVANIA**

**Alex J. Hartzband**
ahartzband@faruqilaw.com

March 6, 2020

**VIA ECF**

The Honorable Edgardo Ramos
United States District Court
Southern District of New York
40 Foley Square, Courtroom 619
New York, NY 10007

      Re:    *Santi v. Hot In Here, Inc., et al.*, Civil Action No. 1:18-cv-03028 (ER)

Dear Judge Ramos:

      We represent Plaintiff Christina Santi ("Plaintiff") in the above-referenced action and write jointly with Defendants-Counterclaimants Hot In Here, Inc., Vlad Lyubovny, and LaTaya Edwards (together, "Defendants-Counterclaimants") (collectively, the "Parties") to respectfully request approval of the Parties' revised Settlement Agreement and Release (the "Revised Settlement"), as required by *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) and in accordance with the Court's November 21, 2019 Order (the "Order") denying approval of the Parties' initial settlement agreement. *See* ECF No. 57. As detailed below, the Parties respectfully submit that the Revised Settlement is reasonable under each of the five *Wolinksy* factors (*see Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012)), and complies with the *Cheeks* admonitions.

      Moreover, the Parties respectfully submit that the Revised Settlement cures all issues raised in the Order denying approval of their initial settlement. As detailed further below, the Parties have resolved each ground for the Court's previous Order denying approval as follows:

(1)   The instant submission explains the rationale for the amount of the settlement payment to Plaintiff, thereby providing the Court with the information it needs to properly assess the Revised Settlement as fair and reasonable (*see* Order at 3);

(2)   Plaintiff's counsel has reduced their attorneys' fees in connection with the settlement and release of Plaintiff's Fair Labor Standards Act ("FLSA") claims from 38% to exactly one-third of Plaintiff's FLSA economic damages, or 24.4% of the total payment for Plaintiff's waiver of her FLSA claims. This is considerably less than the thirty-three percent (33%) contingency fee authorized by the Court (*see id.* at 3-4);



The Honorable Edgardo Ramos
March 6, 2020
Page 2

(3)   The Parties have revised the release language to ensure that Plaintiff's release of her FLSA claims is strictly limited to the FLSA claims at issue in this action (*see id.* at 4-5);

(4)   The Revised Settlement does not contain a non-disparagement clause, resolving the Court's finding that the non-disparagement clause in the initial settlement was unacceptable (*see id.* at 5); and

(5)   The Revised Settlement does not bar Plaintiff from applying for employment with Defendants-Counterclaimants in the future, resolving the Court's finding that the inclusion of such a provision in the initial settlement was unacceptable (*see id.*).

## I.   **BACKGROUND**

### A.   **Summary of Relevant Facts**

This heavily litigated action arose out of Plaintiff's employment with Hot in Here, Inc. as a Digital Content Manager for VladTV.com, a hip-hop and pop culture website, and the Parties' interactions as a result of the same.  On April 5, 2018, Plaintiff initiated this action by filing a Complaint alleging thirteen causes of action, one of which asserted violations of the FLSA for non-payment of overtime.  *See* ECF No. 1.  Specifically, Plaintiff alleges that Defendants-Counterclaimants failed to pay her at a rate of one and one-half times her regular rate of pay for approximately ten hours of overtime she claimed to have worked each week.  *See id.*  As recited in the Order at 1 n.1, Plaintiff amended her Complaint multiple times, most recently filing a Third Amended Complaint which asserts twenty-one causes of action.  *See* ECF No. 48.  The Third Amended Complaint added a second FLSA claim for retaliation.  Plaintiff's nineteen other causes of action included claims under the New York Labor Law ("NYLL"), as well as claims for discrimination and retaliation under (i) Section 1981 of the Civil Rights Act of 1866; (ii) Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act; (iii) the Americans with Disabilities Act, as amended; (iv) the New York State Human Rights Law; and (v) the New York City Human Rights Law.  *See id.*

Defendants-Counterclaimants contest all of Plaintiff's claims and filed Answers to each iteration of Complaint denying any liability to Plaintiff.  *See* ECF No. 49.  Further, Defendants-Counterclaimants filed counterclaims against Plaintiff for breach of fiduciary duty, negligent misrepresentation, breach of contract, and misappropriation (the "Counterclaims") in which they allege, among other things, that Plaintiff falsified company records, misappropriated company property, and misrepresented her identity to obtain monies to which she was not entitled.  Plaintiff has at all times contested the Counterclaims and denied any liability to Defendants-Counterclaimants.



The Honorable Edgardo Ramos
March 6, 2020
Page 3

       The Parties' decision to settle their respective claims reflects their mutual desire to avoid
the distraction, expense, and uncertainties of prolonged litigation.  This decision does not indicate
their respective views regarding the merits of each other's claims and defenses.

### B.      Settlement Negotiations and Procedural History

       In furtherance of their efforts to reach a fair and reasonable settlement of this matter, on
June 12, 2018, the Parties participated in mediation before Christopher M. Mason, Esq. through
the United States District Court for the Southern District of New York's pilot program for cases
involving claims under the FLSA.  *See* ECF No. 30.  Although unsuccessful in reaching a
resolution, the Parties discussed the merits of Plaintiff's claims, the Counterclaims, and overall
prospects for settlement.  Hartzband Decl. ¶ 11.

       Thereafter, counsel for the Parties engaged in extensive discovery, including the exchange
of document requests and interrogatories, responses to the same, multiple document productions,
and deficiency letters.  *Id.* ¶ 12.  Following initial discovery, the Parties engaged in further
settlement discussions, exchanging numerous proposals, damages calculations, analyses of
relevant case law, and additional document discovery.  *Id.* ¶ 13.  After months of negotiations, the
Parties agreed to a settlement and dismissal of their respective claims on terms including payment
to Plaintiff in the amount of $70,000.  *See* ECF No. 56-2.

       On November 8, 2019, the Parties submitted their settlement to the Court for approval.  *See*
ECF No. 56.  The Court denied the Parties' motion based on its determination that: (i) the Parties
provided insufficient information regarding the basis for the settlement amount; (ii) Plaintiff's
counsel's fees under the settlement were too high; (iii) the release of Plaintiff's FLSA claims was
overly broad; (iv) the settlement agreement contained a non-disparagement provision which did
not include a necessary carve-out for truthful statements about the litigation; and (v) the settlement
agreement prohibited Plaintiff from applying for employment with Defendants-Counterclaimants
in the future.  *See* Order at 2-5.

       Following the Court's Order, the Parties met and conferred extensively, and agreed to
modify their agreement to resolve the Court's grounds for denying approval.  Hartzband Decl.,
Exhibit A.[1]  The Parties respectfully submit that approval of the Revised Settlement is warranted
and request entry of an Order granting the instant joint motion.

---

[1] Unless otherwise noted, all exhibits to the Hartzband Decl. are hereinafter cited as "Ex. ___."



The Honorable Edgardo Ramos
March 6, 2020
Page 4

## II.    THE REVISED SETTLEMENT RESOLVES THE BASES ON WHICH THE COURT DENIED APPROVAL OF THE INITIAL SETTLEMENT

### A.    Defendants-Counterclaimants' Rationale and Justification for the Settlement Amount

In its Order, the Court explained that it denied approval of the parties' initial settlement in part because, "[w]ithout information about how the settlement amount was reached, the Court cannot properly assess whether the settlement is fair and reasonable." Order at 3.

From Defendants-Counterclaimants' perspective, the specific settlement amount was simply the number at which the Parties were finally able to agree, after off-and-on again settlement discussions since the spring of 2018. Indeed, for Defendants-Counterclaimants, the agreement to settle and the amount of the settlement were purely pragmatic, and not based on any calculation relating to what Plaintiff might recover as damages. To the contrary, as discussed further below, Defendants-Counterclaimants view all of Plaintiff's claims as wholly without merit and they are confident that the risk of Plaintiff prevailing at trial is extremely low. Unfortunately, however, even if Defendants-Counterclaimants prevail on all claims, the cost that will be incurred to reach that objective will vastly exceed the likely recovery. Defendants-Counterclaimants are prepared to give up the vindication they believe they would achieve with a trial, just to avoid the much larger expense of getting to resolution on the merits.

Defendants-Counterclaimants believe Plaintiff concocted claims to take advantage of the fact that litigation costs are so prohibitive, and that she would not hesitate to do so again.[2] The amount of the settlement reflects Defendants-Counterclaimants' need for certainty which they accomplished with settlement terms that cover the broadest scope permissible (e.g., general release for Non-FLSA Claims; dismissal of all claims with prejudice; and representations of the extent of the Parties' relationships).[3]

In addition, Defendants-Counterclaimants wanted all terms of Parties' settlement in the same agreement, to foreclose the possibility of a suggestion that the Court's approval of settlement of the FLSA Claims was based on incomplete information. The Parties divided the Revised Agreement into three sections to clearly distinguish those provisions which require Court approval from those that do not require approval. Sections 1 and 3 contain the terms of the FLSA settlement.

---

[2] Plaintiff categorically disputes this characterization of both the merits of and motivations for her claims, as well as the baseless claim that she would pursue future litigation for any reason other than vindication of her rights.

[3] Defendants-Counterclaimants assert that Plaintiff concealed her identity to take advantage of opportunities the Company provided to third parties, during Plaintiff's work hours. Again, Plaintiff categorically denies this contention.



The Honorable Edgardo Ramos
March 6, 2020
Page 5

Finally, Defendants-Counterclaimants believe that the total settlement amount of $70,000 being in excess of Plaintiff's maximum possible recovery for her unpaid wages and dismissing the Counterclaims against Plaintiff provided a significant incentive for Plaintiff to agree to the terms Defendants-Counterclaimants wanted.

### B.    Plaintiff's Calculation of the Basis for Her FLSA Recovery[4]

Under the Revised Settlement, Plaintiff is to recover $35,839.50, of which $26,201.75 is to be paid to Plaintiff (as opposed to her counsel) in exchange for the release of her FLSA claims. *See* Ex. A § 1(A).[5]  As reflected in the below chart, this amounts to exactly 100% of Plaintiff's economic (as opposed to liquidated) damages for her claims under the FLSA.  *See* Hartzband Decl. ¶¶ 25-28.

| Time Period | Weeks Worked | Rate of Pay | Regular Rate per Hour | OT Rate per Hour | Unpaid Portion of OT | OT Hours per Week | Unpaid OT |
|---|---|---|---|---|---|---|---|
| 4/5/12 - 12/31/12 | 39 | $250/week | $5.10 | $10.88 | $5.78 | 10 | $2,254.20 |
| 1/1/13 - 12/31/13 | 52 | $450/week | $9.18 | $13.77 | $4.59 | 10 | $2,386.80 |
| 1/1/14 - 3/31/14 | 13 | $450/week | $9.18 | $13.77 | $4.59 | 10 | $596.70 |
| 4/1/14 - 8/31/14 | 22 | $1,000/week | $10.20 | $15.30 | $5.10 | 10 | $1,122.00 |
| 9/1/14 - 12/31/14 | 17 | $1,500/week | $15.31 | $22.97 | $7.66 | 10 | $1,301.35 |
| 1/1/15 - 6/30/15 | 26 | $1,500/week | $15.31 | $22.97 | $7.66 | 10 | $1,990.30 |
| 7/1/15 - 12/31/15 | 26 | $60,000/year | $23.55 | $35.33 | $11.78 | 10 | $3,061.50 |
| 1/1/16 - 2/28/17 | 61 | $60,000/year | $23.55 | $35.33 | $11.78 | 10 | $7,182.75 |
| 3/1/17 - 2/21/18 | 51 | $63,000/year | $24.73 | $37.10 | $12.37 | 10 | $6,306.15 |
| | | | | | | **TOTAL:** | **$26,201.75** |

The above calculation by Plaintiff's counsel reflects Plaintiff's alleged dates of employment, hours worked, rates of pay, and overall damages for unpaid overtime.  Other courts within this District have found the same information sufficient to assess the reasonableness of FLSA settlements.  *See, e.g.*, *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177 (S.D.N.Y.

---

[4] Defendants-Counterclaimants do not agree that any amounts are due to Plaintiff and therefore do not take a position on Plaintiff's calculations regarding its FLSA claims other than acknowledging that the claimed amounts are significantly lower than the settlement amount.  Defendants-Counterclaimants reserve all rights regarding the same.

[5] While Plaintiff will recover a total of $70,000, inclusive of attorneys' fees and costs – which exceeds her maximum FLSA damages – the Revised Settlement expressly provides that $34,610.50 of the $70,000 is to be paid as consideration for the settlement and release of Plaintiff's non-FLSA claims.  *See* Ex. A § 2(B).



The Honorable Edgardo Ramos
March 6, 2020
Page 6

2015).  Accordingly, Plaintiff has provided the requisite "calculations and factual bases underlying [her] recovery amount[.]"  *Id.*  Moreover, as detailed *infra* at § III(A), Plaintiff's recovery under the Revised Settlement also satisfies the first *Wolinsky* factor.

### C.  Attorneys' Fees on Plaintiff's FLSA Claims

The Revised Settlement provides for payment of $9,637.75 to Plaintiff's counsel in connection with Plaintiff's FLSA claims, $8,733.92 of which is intended to compensate Plaintiff for her attorneys' fees. Ex. A § 1(A); Hartzband Decl. ¶¶ 49, 68.  The remainder ($903.83) covers reasonable litigation expenses. Hartzband Decl. ¶¶ 68-69.  The requested attorneys' fees represent 24.4% of the total payment for the release of Plaintiff's FLSA claims.  The payment of attorneys' fees specified here will not detract at all from Plaintiff's compensation, because as detailed above, Plaintiff will still personally receive 100% of her alleged FLSA damages.  As detailed *infra* at § V, attorneys' fees of one-third are presumptively reasonable in FLSA settlements and Plaintiff's counsel's fees in this matter are further supported by a lodestar cross-check.

### D.  Limited Release of Plaintiff's FLSA Claims

The Court found the release of FLSA claims overbroad because it extended to FLSA claims beyond the scope of the instant lawsuit.  *See* Order at 4-5.  That concern is resolved by the Revised Settlement.  The release of Plaintiff's FLSA claims in the Revised Settlement reads as follows:

> In consideration of the FLSA Payment, Plaintiff hereby knowingly and voluntarily, irrevocably and unconditionally, forever and fully releases and covenants not to sue Defendants and their Affiliates for the FLSA Claims.  Nothing contained herein shall preclude Plaintiff from seeking enforcement of any provision of this Agreement.

Ex. A § 1(C).

The above release is expressly limited to Plaintiff's FLSA rights at issue in this litigation, as the Court specified was required under applicable case law.  *See Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (approval of FLSA settlement denied based on "release provision that extends beyond the claims at issue in this action"); *Nights of Cabiria*, 96 F. Supp. 3d at 181 (FLSA settlements may waive only "claims relating to the existing suit").  The FLSA release in the Revised Settlement now comports with the Court's Order; therefore, approval is warranted.



The Honorable Edgardo Ramos
March 6, 2020
Page 7

###### E.    Removal of Non-Disparagement and No Re-employment Provisions

The Court previously denied approval of the Parties' initial settlement because the agreement contained an overbroad non-disparagement clause and prohibited Plaintiff from applying for future employment with Defendants-Counterclaimants. *See* Order at 5. Those clauses were omitted from the Revised Settlement, thereby resolving these two grounds for rejection of the Parties' initial settlement.

### III.    THE SETTLEMENT IS FAIR AND REASONABLE

To determine the reasonableness of the Revised Settlement, the Court must consider the totality of the circumstances, including examining the five so-called *Wolinsky* factors: (1) Plaintiff's range of possible recovery; (2) the extent to which the Revised Settlement will enable the Parties to avoid anticipated burden and expense in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the Parties; (4) whether the Revised Settlement is the product of arm's length negotiations between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335-36.

###### A.    Plaintiff Will Recover the Exact Economic Damages She Claims Are Due Under the FLSA, Plus Attorneys' Fees and Costs, in Exchange for the Settlement and Release of Her FLSA Claims

The first *Wolinsky* factor supports a finding that the Revised Settlement is fair and reasonable, as it provides Plaintiff with 100% of the damages to which she alleges entitlement under the FLSA, plus payment of reasonable attorneys' fees and costs. *See* Ex. A § 1(A); Hartzband Decl. ¶¶ 24-28; *see also supra* at § II(B). This significantly exceeds recoveries recently approved in other settlements involving wage claims within the Second Circuit. *See Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) ("[A] recovery figure of 22.8% seems within the bounds of reasonableness[.]"); *Wang v. Masago Neo Asian Inc.*, No. 14-CV-6249(DRH)(ARL), 2016 WL 7177514, at *2 (E.D.N.Y. Sept. 26, 2016) (recommending approval of settlement where estimated recovery was 30% of potential damages); *Griffin v. Aldi, Inc.*, No. 5:16-cv-00354, ECF No. 109 (N.D.N.Y. Nov. 15, 2018) (approval of settlement of 28% of maximum damages).

Defendant-Counterclaimants believe the FLSA compensation paid to Plaintiff under the Revised Settlement is also much more than reasonable given their view that Plaintiff is not entitled to any recovery for her FLSA claims. Plaintiff acknowledges that her FLSA claims are contested by Defendants-Counterclaimants, who contend that Plaintiff will face significant hurdles in attempting to prove that she is not exempt from the FLSA's protections. *See infra* § III(B). Defendants-Counterclaimants allege that Plaintiff was an exempt employee with substantial management responsibilities, including managing a staff of employees and independent



The Honorable Edgardo Ramos
March 6, 2020
Page 8

contractors providing services to Hot in Here, Inc.  Defendants-Counterclaimants also challenge Plaintiff's contention that she worked more than 40 hours per week.  *See generally* ECF No. 49 (Defendants-Counterclaimants' Answer, Affirmative Defenses, and Counterclaims to Plaintiff's Third Amended Complaint).  Still further, the Counterclaims against Plaintiff include allegations that Plaintiff was actually spending the time she was required to be working for Hot in Here, Inc. on non-company activities, such that Plaintiff was purportedly not working full time at all.

Prior to the Parties' settlement in principle, Defendants-Counterclaimants had already produced extensive documentation that they claimed supported their positions, and document discovery was not near to completion (defense counsel represented that over 25,000 pages of documents were being prepared for production just prior to the agreement on the monetary terms of their proposed settlement).  Defendants-Counterclaimants are confident that this evidence would have proven Plaintiff's exempt status, in addition to invalidating her FLSA claims on other grounds.  Plaintiff, on the other hand, stands by her allegations completely and contends that the Counterclaims have no merit whatsoever.

That said, the Parties agree that resolution of their disputes regarding FLSA liability will involve resolution of fact-intensive issues, especially given the credibility determinations that bear on both liability and damages.  Credibility will be a significant factor in any trial of this case, particularly given the Counterclaims alleging violations of trust and fiduciary responsibilities, which creates inherent uncertainty and risk, as well as Plaintiff's contention and production of evidence that the Counterclaims are false and asserted for purely retaliatory reasons.

The foregoing demonstrates that the settlement amount is no less than fair and reasonable and supports approval of the Revised Settlement.

### B. By Entering Into the Revised Settlement, the Parties Avoid Significant Burden in Establishing Their Claims and the Attendant Risks of Continued Litigation

The second and third *Wolinsky* factors are satisfied because, through the Revised Settlement, the Parties avoid the significant expense of discovery, motion practice, and the risk of a lengthy, fact-specific trial.  Courts have repeatedly recognized that cases where plaintiffs must prove that they engaged in off-the-clock work are both fact-intensive and challenging, as it is difficult to establish the Parties' claims and defenses.  *See, e.g.*, *Riedel v. Acqua Ancien Bath N.Y. LLC*, No. 14 Civ. 7238(JCF), 2016 WL 3144375, at *7 (S.D.N.Y. May 19, 2016) (recognizing risks of proving damages for off-the-clock claims); *Long v. HSBC USA Inc.*, No. 14 Civ. 6233(HBP), 2015 WL 5444651, at *4 (S.D.N.Y. Sept. 11, 2015) ("[T]he claims and defenses are fact-intensive and present risks, including the potential inability to prove the number of hours worked and amount of unpaid overtime wages[.]").



The Honorable Edgardo Ramos
March 6, 2020
Page 9

Here, the burden and expense of litigating this issue would be especially great, as the Parties maintain drastically different assessments of whether and how much Plaintiff worked off-the-clock, as well as whether Plaintiff was exempt from the FLSA's protections. *See* Hartzband Decl. ¶ 35. At a minimum, had they not settled, the Parties would have had to take numerous depositions, analyze tens of thousands of pages of records, and obtain vast amounts of electronically stored information from Plaintiff to assess the amount of time she worked off-the-clock and whether any offsets applied. *Id.* at ¶ 36. Put differently, further litigation would result in "additional expense, including costly depositions [], motion practice, trial preparation, trial and appeal, that could meaningfully decrease possible recovery for plaintiff[.]" *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 299-300 (E.D.N.Y. 2015); *Romero v. La Revise Assocs., L.L.C.,* 58 F. Supp. 3d 411, 420-21 (S.D.N.Y. 2014) (finding, in an FLSA action, that "the fact-intensive nature of [] claims mean that litigation would likely be lengthy, complex, and expensive").

Moreover, both Parties avoid the risk of financial exposure (on top of the costs of litigating). Whereas Defendants-Counterclaimants avoid the risk of an FLSA judgment requiring them to pay Plaintiff liquidated damages under the FLSA, Plaintiff avoids making any payment in connection with the Counterclaims.

Given the fact-intensive nature of the FLSA issues in dispute, if this matter is not settled, it likely will proceed to trial for resolution of a number of fact issues, following many months of discovery and summary judgment motions on issues Defendants-Counterclaimants contend would be capable of resolution after discovery. The Revised Settlement serves the interests of all Parties by avoiding the costs and risks associated with the issues in this litigation, thus satisfying the second and third factors delineated by *Wolinsky*.

## C.     The Revised Settlement Is the Product of Arm's Length Bargaining Between Experienced Counsel and There Is No Possibility of Fraud or Collusion

The fourth *Wolinsky* factor – whether the settlement is the product of an arm's length bargaining process – also supports a conclusion that the Revised Settlement is fair and reasonable. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the Revised Settlement." *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472(KBF) (DCF), 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234(LB), 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (approval granted where settlement "was the result of arm's length negotiations, which were undertaken in good faith by counsel") (internal quotation marks omitted). The Parties are represented by counsel experienced in employment litigation. Hartzband Decl. ¶¶ 42-43; Ex. B (Plaintiff's counsel's firm résumé). Counsel for the Parties have worked diligently to advance their clients' positions and negotiate a fair resolution. Hartzband Decl. ¶ 44.



The Honorable Edgardo Ramos
March 6, 2020
Page 10

There is similarly no evidence of fraud or collusion.  On the contrary, even at its early stages, litigation in this action has been contentious.  By way of example, the Parties ended their first mediation without a settlement and continued to litigate this matter for several months thereafter.  *See* ECF No. 30, *et seq.*  Moreover, Defendants-Counterclaimants opposed Plaintiff's motion for leave to amend her Complaint to add retaliation claims, thereby further evincing a lack of collusion.  *See* ECF Nos. 31-35.

## IV.   THE REVISED SETTLEMENT IS CONSISTENT WITH THE SECOND CIRCUIT'S DECISION IN *CHEEKS*

In addition to the *Wolinsky* factors, the Court must analyze whether the Revised Settlement complies with the admonitions set forth in *Cheeks* – specifically, that overbroad releases, stringent confidentiality provisions, and other terms that contravene the remedial purposes of the FLSA are to be avoided.  *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824(SIL), 2015 WL 6550560, at *1 (E.D.N.Y. Oct. 28, 2015).

The Revised Settlement reflects the Parties' careful consideration of the FLSA issues to ensure that the resolution of the FLSA claims does not run afoul of the provisions admonished in *Cheeks*.  Following *Cheeks*, courts have looked unfavorably upon FLSA settlement provisions like the ones the Court held were unacceptable.  *See generally* the Order; *see also Martinez*, 2016 WL 206474, at *1 (non-disparagement provisions are objectionable where they "contravene[] the remedial purposes of" the FLSA) (internal quotation marks omitted); *Nights of Cabiria, LLC*, 96 F. Supp. 3d at 178 ("The rationale for rejecting confidential FLSA settlements is particularly strong, since sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair.") (internal quotation marks omitted); *Wolinsky*, 900 F. Supp. 2d at 337-41 (court did not approve FLSA settlement with confidentiality agreement); *Alvarez v. Michael Anthony George Const. Corp.*, No. 11 CV 1012(DRH)(AKT), 2015 WL 3646663, at *2 (E.D.N.Y. June 10, 2015) (court did not approve FLSA settlement as the language of the release was "far too sweeping to be fair and reasonable"); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014) (court denied approval based on broad release in FLSA settlement agreement).

As explained throughout the Parties' instant application, the Revised Settlement avoids all of the provisions the Court found unacceptable.  Accordingly, the Parties respectfully submit that the Revised Settlement should be approved.



The Honorable Edgardo Ramos
March 6, 2020
Page 11

## V.    PLAINTIFF'S PROPOSED ATTORNEYS' FEES AND COSTS ARE FAIR AND REASONABLE

Plaintiff requests that the Court approve Plaintiff's counsel's fees of $8,733.92 in connection with the release of her FLSA claims.  This amounts to 24.4% of the total payment to Plaintiff for the release of her FLSA claims.  This is also exactly one-third of the payment Plaintiff will herself receive, which, as explained *supra* at § II(B), represents 100% of her alleged FLSA damages.

The requested fees are consistent with attorneys' fees approved as part of FLSA settlements in this Circuit.  *See, e.g.*, *Navarrete v. Milano Mkt. Place, Inc.*, No. 18-CV-7858 (OTW), 2019 WL 4303347, at *2 (S.D.N.Y. Sept. 11, 2019) (the attorneys' fee award of "one-third of the settlement sum is reasonable and consistent with fees upheld by courts in this District"); *Flores v. Anjost Corp.*, No. 11 Civ. 1531(AT), 2014 WL 321831, at *8 (S.D.N.Y. Jan. 29, 2014) (finding one-third award "consistent with the norms" of the Second Circuit and collecting cases where one-third was awarded in FLSA cases) (internal quotation marks omitted); *Singh v. MBD Constr. Mgmt., Inc.*, No. 16 Civ. 5216(HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate"); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (same); *Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14-cv-4382 (LGS), 2015 WL 4210906, at *2-3 (S.D.N.Y. July 9, 2015) (awarding one-third to plaintiffs' counsel).  The requested fees are also less than the amount already approved by the Court.  *See* Order at 4.

Plaintiff's counsel was retained on a purely contingency basis and, as a result, has advanced all costs and shouldered all risk in this litigation.  *See* Hartzband Decl. ¶ 52.  Such risks have included a strong possibility that Plaintiff would recover no damages at all, given the highly fact-intensive nature of her wage claims and difficulty in proving economic damages associated with her discrimination and retaliation claims.  *See supra* § III(A).

Awarding the requested fees furthers the FLSA's remedial purposes by recognizing the risks attendant to relatively small wage claims like Plaintiff's.  *See Asare v. Change Grp. of N. Y., Inc.*, No. 12 Civ. 3371(CM), 2013 WL 6144764, at *22 (S.D.N.Y. Nov. 18, 2013) ("The FLSA and NYLL are remedial statutes designed to protect the wages of workers.  Fair compensation for attorneys who prosecute those rights by taking on such litigation furthers the remedial purpose of those statutes."); *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) ("[D]ue to the relatively small settlement involved here, the requested fee award" of $50,000 out of a $125,000 settlement fund, or 40% of the Revised Settlement, "is necessary to compensate counsel adequately.").  Put differently, awarding "fees sufficient to compensate counsel for at least a substantial portion of the work it has performed" ensures that counsel will continue to "be willing to take on future small-scale [ ] actions such as this."  *Id.*; *see also In re Indep. Energy Holdings*



The Honorable Edgardo Ramos
March 6, 2020
Page 12

*PLC,* No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003) (noting that there is an inverse relationship between a fee award and the amount of the settlement).

The reasonableness of the requested fee is further confirmed by applying the lodestar method as a "cross check." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007); *Flores*, 2014 WL 321831, at *9; *In re Penthouse Exec. Club Comp. Litig.*, 10 Civ. 1145(KMW), 2014 WL 185628, at *10 (S.D.N.Y. Jan. 14, 2014); *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751(RRM)(RER), 2017 WL 2778029, at *1 (E.D.N.Y. June 26, 2017). The lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Id.*

As of November 7, 2019 (the day before the Parties submitted their initial settlement agreement for approval), Plaintiff's counsel billed 410 hours on this matter, amounting to $163,117.50 in fees if calculated pursuant to the lodestar. *See* Hartzband Decl. ¶ 59; Ex. C (Plaintiff's counsel's contemporaneous billing records). The lodestar is calculated based on the most recently approved hourly rates for Plaintiff's counsel involving similar claims under the FLSA. *See Georgiev, et al. v. Shapiro, et al.*, No. 1:19-cv-122(JPO)(HBP), ECF Nos. 41-6, 47-48 (approving settlement and finding that rates of $500 for partner Innessa M. Huot, $425 for senior associate Alex J. Hartzband, $350 for associate Patrick J, Collopy, $175 for paralegal Anthony J. Aloise, and $125 for other professional support staff were reasonable).

Similar hourly rates for Plaintiff's counsel have been approved by other courts in the Second Circuit and across the country. *See, e.g.*, *Alam v. O&S Gen. Contractors Corp.*, No. 18-cv-2069, ECF Nos. 19-4, 20 (LDH)(JO) (E.D.N.Y. Aug. 17, 2018) (approving hourly rates of $600 for Ms. Huot, $450 for Mr. Hartzband, $400 for Mr. Collopy, and $310 for Mr. Aloise); *Guttentag, et al. v. Ruby Tuesday, Inc.*, No 12 Civ. 3041(AT), ECF Nos. 107-8, 109 (S.D.N.Y. Oct. 2, 2014) (approving hourly rates of $875-$625 for partners, $585-$555 for senior associates, $390-$375 for junior associates, $315 for head paralegal, and $275-245 for other paralegals); *Foster, et al. v. L-3 Commc'ns EoTech, Inc., et al.*, No. 15-cv-03519(BCW), ECF Nos. 140-1, 155 (W.D. Mo. July 7, 2017) (approving hourly rates of $550 for Ms. Huot, $375 for Mr. Collopy, and $310 for Mr. Aloise); *Run Them Sweet, LLC v. CPA Global, LTD, et al.*, No. 16-CV-1347, ECF Nos. 108-4, 114 (E.D. Va. Oct. 6, 2017) (approving hourly rates of $550 for Ms. Huot, $275 for Mr. Collopy, and $125 for Mr. Aloise); *March, et al. v. First Choice Medical, PLLC*, No. 15-cv-3669 (GRB) (E.D.N.Y. Mar. 7, 2017) (court approved one-third fee after lodestar, based on $500 per hour rate for Ms. Huot used as cross-check); *Griffin, et al. v. Aldi, Inc.*, No. 16-cv-354, ECF Nos. 104-4, 109 (LEX)(ATB) (N.D.N.Y. Nov. 15, 2018) (approving hourly rates of $500 for Ms. Huot, $350 for Messrs. Hartzband and Collopy, $175 for Mr. Aloise, and $125 for other professional support staff).



The Honorable Edgardo Ramos
March 6, 2020
Page 13

Additionally, courts have previously noted that "[a] reasonable hourly rate is 'the rate a paying client would be willing to pay." *HVT, Inc. v. Port Auth. of N.Y. and N.J.*, No. 15 Civ. 5867(MKB)(VMS), 2018 WL 6079932, at *1 (E.D.N.Y. Nov. 21, 2018) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). A meaningful portion of Plaintiff's counsel's practice is non-contingency cases where clients in fact pay on an hourly basis at the same hourly rates submitted to the Court herewith. Hartzband Decl. ¶ 55. Working on the instant matter on a contingency basis required Plaintiff's counsel to expend considerable time and resources that could have been otherwise allocated towards non-contingency, hourly work. *Id.* at ¶ 56. In addition, the overall risks to Plaintiff's counsel are significantly higher in this particular case where counsel's representation expanded to the defense of four fact-intensive Counterclaims. *Id.* at ¶ 57. Plaintiff's counsel accepted these risks and undertook prosecuting and defending Plaintiff in this action without any assurance of payment for their services, litigating on a wholly contingent basis in the face of significant risk. *Id.* at ¶ 58.

Applying a lodestar cross-check using the above-referenced hourly rates results in a negative multiplier of 0.054 times the $8,733.92 in fees Plaintiff's counsel seeks. *Id.* at ¶ 63. Put differently, Plaintiff requests approval of attorneys' fees amounting to approximately one-twentieth the market value of the hourly work that has been invested in this action to bring it to resolution. As such, the requested attorneys' fees are reasonable.

To be clear, and as noted above, the Revised Settlement expressly provides that $34,610.50 of the total payment of $70,000 is to be paid as consideration for the release of Plaintiff's non-FLSA claims. Per Plaintiff's agreement with counsel at the outset of this litigation, Plaintiff's counsel will recover attorneys' fees of 38% in connection with litigating Plaintiff's non-FLSA claims. While these fees are not subject to Court approval, they are nevertheless justified under the circumstances. In addition to the justifications noted above, all of which apply with equal force here, the fees in connection with Plaintiff's non-FLSA claims are further justified by Plaintiff's counsel's defense and, if approved, settlement of the Counterclaims.

Further, Plaintiff requests the Court approves reimbursement of costs and expenses incurred by Plaintiff's counsel in furtherance of this matter. Plaintiff's counsel has incurred $903.83 in actual costs and expenses for filing fees, legal research, and postage. *Id.* at ¶¶ 68-69. These expenses are reasonable, as well as incidental and necessary to the litigation; therefore, their reimbursement under the Revised Settlement should be approved. *See Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 283 (2d Cir. 1987)).



The Honorable Edgardo Ramos
March 6, 2020
Page 14

## VI.    <u>**CONCLUSION**</u>

In view of the foregoing, the terms of the Revised Settlement, and the extensive negotiations between the Parties and their counsel, the Parties respectfully request that the Court approve of the Revised Settlement, dismiss the instant action with prejudice, and direct the Clerk of the Court enter the same on the docket.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

Alex J. Hartzband

Cc:    Counsel of Record (*via* ECF)

Encl.